IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| SHARON MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-1115-CV-W-HFS |
| | ) | |
| TYSON FOODS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Defendant Tyson's motion for summary judgment is pending in this case alleging sexual harassment of plaintiff Sharon Miller, a former employee of that company. Miller also alleges retaliation. As indicated in my order of March 29, taking this case off the immediate trial docket, I inferred a possible claim for constructive discharge but now find it is not pleaded, and in any event would be without legal merit.

An administrative charge of discrimination was filed April 5, 2004. Plaintiff first complained to management on March 9, 2004. She says she felt "forced to resign" the next day, after having been offered a transfer from the night shift (where the problems had occurred) to a "day position that was temporary and I would not receive .35/hr. pay differential" that had previously been received.[1]

The record reflects that the offer to plaintiff was simply the first, tentative form of relief proposed by management and that plaintiff immediately sought other employment. Thus, as in

---

[1] Presumably daytime work without incentive pay cannot be objectively described as less desirable work. Whether plaintiff's personal preference for the night shift is pertinent need not be ruled.

Duncan v. General Motors Corp., 300 F.3d 928, 936 (8th Cir. 2002) plaintiff "did not give (the employer) a reasonable opportunity to work out the problem. . .prior to submitting her resignation". The situation did not qualify for a constructive discharge for this and other reasons.

There being no basis for a jury to infer retaliatory intent to punish plaintiff for complaining, a retaliation claim is also legally without merit. Whether or not the immediate response to the complaint was adequate or botched, the law of retaliation does not apply. Assuming a miscarriage occurred in the effort to separate plaintiff from the three males who had allegedly harassed her, and that a different work arrangement should have been arranged, immediately or soon after the complaint, this would not evidence "retaliatory intent", which is "the centerpiece of retaliation claims." Peebles v. Potter, 354 F.3d 761, 770 (8th Cir. 2004)(emphasis added).

As Peebles points out, a reasonable inference of anger or punitive intent is necessary to sustain a retaliation complaint. See the case cited in Peebles, Amir v. St. Louis University, 184 F.3d 1017, 1026 (8th Cir. 1999). While an acknowledgment of anger, as in Amir, is of course not required, this case lacks material from which a reasonable jury could conclude there was punitive intent. Counsel for plaintiff makes no effort to do so.[2]

Stripped of unsound contentions we have the initial complaint that plaintiff was the victim of sexual harassment, which includes the combined conduct of Saucedo and two of plaintiff's co-workers, "Hector and Leonardo". Some months before the complaint, as early as November, 2003,

---

[2] While plaintiff did assert retaliation in her charge of discrimination, my reading is that she was not referring to the management decision in March, 2004, but rather to Joel Saucedo, her immediate superior on the job from which she was being reassigned. She states she was "taken off a job packing hams. I believe this was in retaliation for not having Saucedo over to my house for sex." Whatever facts she was referring to, they apparently do not amount to an adverse employment action that would sustain a retaliation claim, and the ham-packing contention is not pursued by counsel.

2

Hector Guerrero allegedly proposed sex after wrapping his arms around plaintiff's waist and telling her she had "a nice ass". Plaintiff complains this occurred repeatedly during subsequent weeks. He also allegedly and persistently asked highly intrusive sexual questions, as did Leonardo Gamez. Plaintiff says she told them she was "not interested in talking. . .about these things." On another occasion, after a female co-worker, Lorraine, rubbed against their genitals, Hector allegedly showed plaintiff an erection. Hector also allegedly sought, more or less forcefully, to have sex with plaintiff at the workplace and offered her $500 for sex.

Subsequent to these events, plaintiff says that Lorraine proposed that she and Saucedo join plaintiff in a sexual threesome. Some weeks earlier, in December, 2003, Saucedo had told plaintiff he had moved to Sweet Springs and knew where she lived. He asked to "come over for a drink" and later said "he would stop by my house and make me feel better." Plaintiff turned down the request, and was taken off a job she apparently considered to be desirable work.

While discovery has developed some variations on the facts asserted in the charge of discrimination I conclude they are essentially outlined in the charge. Defendant contends these allegations do not rise to the level of sexual harassment, citing Duncan, supra, an Eighth Circuit case frequently cited recently for establishing a demarcation between submissible and nonsubmissible harassment claims.

The panel in Duncan lost Judge Richard Arnold in dissent. Judge Wollman, one of the two majority judges, has described it in bland and limiting terms, as claiming that plaintiff had been "asked out, criticized, asked to sketch pottery with a sexual theme, and unnecessarily touched on the hand". Henthorn v. Capitol Communications, Inc., 359 F.3d 1021, 1027 (8th Cir. 2004). So described, the allegations here are stronger, particularly in that Duncan's teasing and ridicule was

3

the product of misconduct of a cool, unemotional nature, however mean-spirited. Ms. Duncan was quietly mocked, not embarrassed in a hot-blooded manner. Arguably the average or typical victim would be angry and humiliated, but able to respond in a more controlled manner than here.[3]

A potentially more difficult case for plaintiff to overcome is LeGrand v. Area Resources for Community and Human Services, 394 F.3d 1098 (8th Cir. 2005). That case found a deficiency in plaintiff's claim of homosexual propositioning and occasional touching on three occasions in a nine-month period. It has been recently described by Judge Bye as involving "severe but infrequent conduct". Wright v. Rolette County, 417 F.3d 879, 889 n.1 (8th Cir. 2005) (concurring opinion). District judges in the Circuit have been somewhat baffled in applying LeGrand, and Judge Bye notes the lack of clarity in drawing lines in this area of the law. Id. at 888.[4]

If I accept the Wright case as requiring concentration on numerosity and frequency I do not believe defendant has made a clear case for denying jury consideration of the harassment issue, considering the three men as part of the totality of circumstances. Lack of employer notice is also not plainly established, considering that Saucedo may have had a duty to be watchful and report and that there was a prior recent instance of consensual sexual conduct on the premises that arguably was

---

[3]Plaintiff asserts she has a history of sexual abuse and sensitivity. That goes to damages and is not a test of liability. Presumably it helps explain the long delay before plaintiff worked up the nerve to complain. Defendant is of course free to argue that delay shows most of the complaints are exaggerated, or that plaintiff's silence shows nonchalance about the events.

[4]It may be inappropriate to suggest the appellate judges were influenced by the district judge's conclusion that the clergyman who was the source of the misconduct was neither a supervisor nor a co-employee, but rather some sort of consultant. They noted but did not rule that issue. I might suggest that the judges may have considered (without articulation) the average mature male "victim" would be able to handle the misconduct–and thus LeGrand does not easily translate into a rule applicable to generally more sheltered women or to African Americans harassed with racial epithets or "practical jokes". Of course this is stereotyping, but almost any effort to imagine a "reasonable person's" response engages in such reasoning.

4

not responded to sufficiently forcefully to send a clear message to Guerrero and Gamez, the same alleged culprits we have here.

It seems possible that the lack of misconduct (or at least diminution) for some weeks before plaintiff complained could be used to limit the period of liability for damages, if allowed by a jury. But that is not the current question.[5]

The motion for summary judgment (Doc. 42) is GRANTED as to all claims except for damages for sexual harassment for a limited period beginning in November, 2003. The motion is DENIED in part, as indicated above. The motion to strike (Doc. 44) is DENIED.

It is further ORDERED that this case is rescheduled for trial on the joint docket beginning in October, 2006.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

April 6, 2006

Kansas City, Missouri

---

[5] For settlement purposes the parties should recognize that this does not look like a "big case."

5